# EXHIBIT 16

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VICTIM RIGHTS LAW CENTER; T.R., by and through his parent, TARA BLUNT; TARA BLUNT; A.J., by and through his parent, KAREN JOSEFOSKY; and KAREN JOSEFOSKY, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 1:25-cv-11042-MJJ |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF EDUCATION; LINDA MCMAHON, in her official capacity as Secretary of Education; and CRAIG TRAINOR, in his official capacity as Acting Assistant Secretary for Civil Rights, | ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

**DECLARATION OF KAREN JOSEFOSKY**

Pursuant to 28 U.S.C. § 1746, I, Karen Josefosky, hereby declare and state as follows:

1.      I am a resident of Michigan. I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2.      This declaration is submitted in support of Plaintiffs' request for entry of a preliminary injunction. I urge the Court to grant this injunction to avoid irreparable harm from Defendants' efforts to undermine the administrative system that is supposed to protect my son from discrimination.

**A.J's disability-based harassment and his school's failure to respond**

3.      My son, A.J., is a ten-year-old child with life-threatening allergies, including an allergy to dairy. A.J.'s allergies are so severe that they interfere with major life activities, including

his breathing and eating, and constitute a legal disability under Section 504 of the Rehabilitation Act of 1973 ("Section 504").

4.      From 2023 through 2024, A.J. attended third grade at a public school in Birmingham, Michigan.

5.      Because of his severe allergies, A.J.'s Section 504 plan required that his classroom must be kept dairy-free. But from the very start of the 2023-24 school year, students brought allergens into the classroom, disregarding its dairy-free requirement.

6.      A.J.'s classmates also repeatedly and severely harassed A.J. in class for his allergies, despite his teacher's presence and awareness of the harassment. Classmates called A.J. names, pulled his glasses off his face, shoved him, and punched him. They waved food with A.J.'s allergens and taunted him to touch it or eat it. They rubbed cheese on his desk. On November 13, 2023, a student poured milk on A.J.'s lunch and said, "[a]llergies are dumb." In a separate incident, another student poured milk on A.J.'s coat as other students laughed.

7.      On April 15, 2024, ten students surrounded A.J., pushed him, tripped him, slapped his laptop closed, tried to take his glasses, put cutouts of cheese on his desk and cubby, and put a cheese crown on his head, among other forms of harassment.

8.      The school did not respond to this recurring harassment effectively, if at all, and did not enforce the Section 504 plan. I repeatedly complained about this harassment in calls, and in meetings with A.J.'s teacher, the school principal, and the deputy superintendent. The deputy superintendent and other school officials admitted that the school had no plan in place to protect A.J. from further harassment. The district nevertheless denied my family's request for A.J.'s transfer to a different public school.

9.      After the April 15, 2024 assault, A.J. no longer felt safe returning to school.

2

10.     Because of the school's continued refusal to act, I withdrew A.J. from his public school, homeschooled him for the remainder of the school year, and continued to homeschool him for fourth grade the following year.

### OCR complaint and investigation

11.     On September 2, 2024, I filed a complaint with the United States Department of Education's ("Department") Office for Civil Rights ("OCR") regarding the school's failure to address A.J.'s experiences of disability-based harassment and to implement A.J.'s Section 504 plan.

12.     The OCR complaint also sought reimbursement for A.J.'s therapy for that unaddressed discrimination, as well as funds for alternative schooling.

13.     On October 1, 2024, OCR opened an investigation into "whether a student was subjected to harassing conduct on the basis of disability . . . and, if so, whether the District failed to investigate promptly and to respond appropriately, in violation of 34 C.F.R. § 104.4, and the Title II implementing regulation at 28 C.F.R. § 35.130."

14.     OCR's letter stated that the investigation would also assess "whether the District failed to provide a qualified student with a disability with a free appropriate public education (FAPE), in violation of the Section 504 implementing regulation at 34 C.F.R. § 104.33."

15.     A.J.'s case was assigned to the Cleveland OCR office.

16.     OCR recommended mediation shortly after opening its investigation, and we began to discuss potential dates with the OCR mediator.

### Irreparable harm from the RIF

17.     I last spoke with the OCR mediator on January 15, 2025. During that conversation, we discussed potential mediation dates within the next several days.

3

18.     On January 31, 2025, I emailed the OCR mediator seeking an update, but he never responded. I then called the OCR investigator assigned to A.J.'s case on February 5, 2025, who was unaware of whether any progress was being made on the case.

19.     On February 5, 2025, my attorney emailed the OCR mediator, who replied that OCR paused its investigation into our complaint.

20.     Later, the current Secretary of Education, Linda McMahon, announced that the Department had initiated a massive reduction in force ("RIF").

21.     OCR has not contacted my family to schedule the mediation since then, nor has it indicated that any progress has been made on our case.

22.     We have since scheduled a private mediation, but if that mediation goes forward, we will need to pay the private mediator thousands of dollars to mediate the case, and it is unclear whether it will effectively resolve A.J.'s complaint without OCR's involvement.

23.     Our family was counting on OCR's intervention to allow A.J. to return to school safely. OCR would be invaluable in helping A.J.'s former school develop protocols for how to implement Section 504 and deal with disability-based harassment. We understand that if OCR continues its investigation, it could compel the school district to train teachers and staff to respond to disability harassment, devise other ways to protect A.J. from future harassment, and provide other remedies requested, and then follow up to ensure they are properly implemented.

24.     A.J. is unlikely to receive timely relief, if any relief at all, because of the RIF. We have no reason to believe that the school will take steps to keep A.J. safe in public school without OCR's intervention. As a result, we cannot send A.J. back to public school this coming fall.

25.     I believe that A.J., like all children, deserves to be able to attend school safely. Each day he cannot do so does immeasurable harm to him and our family, the full extent of which may

not be known until years later. My family is struggling to afford alternative schooling for A.J., as well as to pay for the counseling he needs because of the disability-based harassment he has endured. A.J. is lonely, sad, and shows signs of depression because he cannot go to public school with other kids without facing harassment based on his disabilities.

I declare under penalty of perjury that, to the best of my knowledge, the following is true and correct. Executed this   2nd day of May, 2025.

/s/ Karen Josefosky

Karen Josefosky

5