# EXHIBIT 19

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW YORK, *et al.*,

  Plaintiffs,

      v.

LINDA McMAHON, *et al.*,

  Defendants.

C.A. No. 1:25-cv-10601

**DECLARATION**

## DECLARATION OF Kathleen Ehling

I, Kathleen Ehling, declare as follows:

1. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Assistant Commissioner for the Division of Educational Services within the New Jersey Department of Education ("NJDOE"), a position I have held since 2021. As Assistant Commissioner, I oversee the Offices of Special Education, Supplemental Educational Programs, Fiscal and Data Services, Student Support Services, Performance Management, and the Marie H. Katzenbach School for the Deaf. I also serve as the State Director of the Elementary and Secondary School Emergency Relief Funds (collectively "ESSER" "ESSER II" and "ARP ESSER"). I am responsible for overseeing implementation of the federal Every Student Succeeds Act, the federal Individuals with Disabilities Education Act ("IDEA"), the New Jersey Tiered Systems of Support, and the development and release of the annual School

Performance Reports. Prior to holding this position, I served in various positions throughout my twenty-year tenure with NJDOE including as the Director of the Office of Fiscal and Data Services, in which capacity I oversaw the administration of over $4 billion in federal and state grant funds for NJDOE. Prior to this role, I served as the Manager of the Bureau of Governance and Fiscal Support, Office of Special Education Policy and Procedure within NJDOE. In this capacity, I oversaw the implementation of administrative policy for the office, including development of regulations, model Individualized Education Programs ("IEPs"), and the Parental Rights in Special Education booklet. I also oversaw the dispute resolution system, the complaint investigation process, the approval and monitoring of approved private schools for students with disabilities and clinics and agencies, the SEMI program, and the IDEA Part B grant process. Prior to assuming the role of Manager, I worked as a Special Assistant to the Director of the Office of Special Education Programs, a Complaint Investigator, and a Mediator with the Office of Special Education.

3. As Assistant Commissioner, I have personal knowledge of the matters set forth below or have knowledge of the matters based on my review of information and records gathered by my staff.

4. I submit this declaration to explain the impact on the State of New Jersey and NJDOE of the announcement by the United States Department of Education ("the Department") on March 11, 2025 that it would be reducing its staff by 50% and that this was only the "first step" to a "total shutdown" of the Department. *U.S. Department of Education Initiates Reduction in Force*, Press Release, Department of Education (Mar. 11, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-initiates-reduction-force ("March 11 Press Release").

5.      The information in the statements set forth below was compiled through personal knowledge, NJDOE personnel who have assisted in gathering this information from our agency, and on the basis of documents that have been provided to me.

6.      NJDOE's mission is to support schools, educators, and districts to ensure all of New Jersey's 1.4 million students have equitable access to high quality education and achieve academic excellence.

7.      Given my experience, and in light of what has been communicated to NJDOE to date about the Department's massive reductions in force, it is expected that significant disruptions and delays will prevent the Department from meeting its obligations to assist NJDOE in fulfilling its missions.

8.      As part of its day-to-day work, NJDOE maintains regular contact with the Department in a number of its program areas, including but not limited to: referring complaints to the Office of Civil Rights ("OCR") pertaining to discrimination and implementation of special education services, federal grant disbursements, monthly meetings with the United States Office of Special Education Programs to discuss issues related to the education of students with disabilities, monthly office hours related to the implementation of Title IV and the Bipartisan Safer Communities Stronger Connections Grant, and monthly meetings with the United States Department of Education program staff to discuss the New Jersey Pathways to Postsecondary Success Grant.  This contact is typically effectuated through phone conversations, email correspondence, or meetings and enables NJDOE to address issues as they arise and, where necessary, refer parents and students appropriately to the Department for further answers and solutions.

9. Since the Department announced the reduction in force on March 11, 2025, communications between NJDOE and the Department have been disrupted, and NJDOE has received conflicting information about what programs will and will not be impacted.

10. For example, although NJDOE received a letter from Acting Assistant Secretary Hayley B. Sanon on March 14, 2025 describing the reduction in force as "strategic cuts to offices and programs that will not directly impact students and families but rather empower states and localities," NJDOE is already experiencing difficulty getting in contact with Department employees to engage in daily interactions that support implementation of federal programs that safeguard students and their families.

11. Immediately upon being notified of the reduction in force, NJDOE proactively reached out to the Department on March 11, 2025, to ascertain whether there would be changes to a number of programs, including but not limited to the Every Student Succeeds Act ("ESSA"), 21st Century Community Learners Grant, and School Based Mental Health Services Grant. In one response, NJDOE was advised that the Department was not sure whether it could answer NJDOE's question and that it "may not be possible" for Department staff to reach out. On March 18, 2025, the Department notified NJDOE that the Title II, Part A program officer would remain unchanged but that the Office of Migrant Education ("OME") director is leaving effective March 21, 2025. The Department did not address NJDOE's concerns regarding the aforementioned programs and grants.

12. In addition, on March 13, 2025, NJDOE received a communication from the Department alerting it to significant changes with respect to Grant Number R372A230024, the State Longitudinal Data Systems ("SLDS") Grant. The State receives $3,750,000 in federal funding for the SLDS grant to improve data infrastructure and interoperability that expands

capacity for using preschool through college data to make evidence-driven policy decisions. This funding supports expanding data sources, strengthening the capacity for evidence-based policymaking, and enabling longitudinal studies from preschool through college. The initiative ensures seamless data exchange and promotes the effective use of preschool through workforce data to drive informed policy decisions. Without this critical funding NJDOE would be unable to sustain the infrastructure needed to assess the impact of policy decisions on educational outcomes. This would hinder data interoperability, limit access to comprehensive longitudinal data, and reduce the state's ability to make informed and evidence-based policy decisions that support students from preschool through college.

13. According to the communication, the Department confirmed that the federal Institute of Education Sciences was "deeply impacted" by the reduction in force. Specifically, NJDOE learned that "[b]oth divisions of the National Center for Education Research [("NCER")] and all the staff who were members of those teams were affected" and that "the team that manages the State Longitudinal Data System grants at the National Center for Education Statistics ("NCES") was also affected."

14. As a result, NJDOE was advised on March 13, 2025 that all NCER and NCES grantees were redirected to a single point of contact for all inquiries. We anticipate that this will significantly delay the ability of the Department to respond to inquiries regarding NCER and NCES grant inquiries, because all grant recipients nationwide will need to reach out to one contact for every request.

15. In addition to drastically reducing capacity to provide assistance to NJDOE for its SLDS Grant, the Department has already canceled its monthly reporting meeting for March 17, 2025 for New Jersey's SLDS Grant and instead required a written update on grant activities.

The cooperative agreement between the Department and NJDOE requires NJDOE to provide monthly progress updates on the longitudinal data systems. There has been no communication as to whether the meetings will resume or whether NJDOE will be required to submit written updates in compliance with the grant terms.

16. In other cases, NJDOE has not been able to receive answers at all from the Department about crucial programs.

17. For example, the federal OCR is responsible for, among other things, receiving and investigating complaints from parents and students pertaining to 504 educational plans developed in accordance with Section 504 of the Rehabilitation Act of 1973 ("504 plan"). A 504 plan provides students with disabilities accommodations to ensure they receive a free and appropriate public education.

18. NJDOE's Office of Special Education ("OSE") is responsible for monitoring compliance for students with disabilities, including those with 504 plans. As part of its routine work, OSE refers approximately 75–100 cases to OCR each year regarding issues outside OSE's scope of authority. These cases include but are not limited to instances where a student or family alleges violations of federal disability rights laws such as improper implementation of a student's 504 plan, discrimination on the basis of a child's disability, or retaliation by a school district based on disability-based advocacy.

19. OCR's involvement in these cases is crucial because it provides an accessible venue for students with disabilities to vindicate their rights and attain access to critical educational assistance. If OCR is unable to investigate and mediate these claims then students and families are without administrative remedies to ensure compliance with 504 plan accommodations such as assistive technology, preferential seating, extended time on exams, and

modified assignments needed to succeed in the least restrictive environment. Students and families would be forced to bring a civil suit to redress any harms which would cost significant time and resources. NJDOE would also be burdened with increased time and expense defending these claims. NJDOE is prohibited from handling these claims themselves as they lack statutory authority under the ADA and requisite experience to do so.

20. NJDOE is aware that there have been significant impacts on OCR as a result of the March 11, 2025 reduction in force. As of March 17, 2025, staff from OSE attempted to reach out via telephone and e-mail to OCR. An automated telephone message redirected staff to one of 12 regional offices. However, upon information and belief since the March 11 Press Release, seven of the twelve regional offices are no longer operating, including the New York Office previously serving New Jersey.

21. Staff tried multiple times to get in touch with the New York Regional Office, but all telephone calls went to voicemail and no response has been received to date. The New York Regional Office had answered telephone calls and responded to inquiries prior to the March 11, 2025 RIF.

22. Likewise, emails sent to "ocr.newyork@ed.gov" have not been returned.

23. In accordance with the Methods of Administration Civil Rights Compliance program, NJDOE conducts monitoring activities in accordance with OCR requirements, to ensure that all students have equal access to college and career readiness programs. One monitoring visit is scheduled in March and two in April. USDOE and OCR have not indicated whether these compliance visits will be kept or cancelled. NJDOE must "adopt a compliance program to prevent, identify, and remedy discrimination on the basis of race, color, national original, sex or handicap" pursuant to 34 C.F.R. Part 100, Appendix B. If OCR does not conduct

the compliance visits students with disabilities are at higher risk for discrimination based on their disability status.

24. In addition to day-to-day contact between NJDOE and the Department, NJDOE also receives substantial federal funding to assist it in carrying out its mission. According to the Fiscal Year 2025 Appropriations Act, P.L. 2024, c. 22, the New Jersey Legislature appropriated approximately $1,237,818,000 in expected and anticipated federal funding to the NJDOE. These appropriations are allocated to various NJDOE programs and services, including but not limited to special education services, the Marie H. Katzenbach School for the Deaf, career readiness and technical education programs, bilingual education services, programs for disadvantaged youth, and early childhood education programs.

25. NJDOE uses the G5.ed.gov system to view and withdraw federal funds to use for its programs and to pay vendors. As of March 18, 2025, when attempting to log in to the G5.ed.gov system, NJDOE received a notice to expect "delays in connecting to a live help desk agent" because of "severe staffing restraints." A true and accurate screenshot of this notice is below:



26.     In light of the uncertainty that the reduction in force has caused to date, NJDOE expects confusion to persist.  I am concerned that this confusion will result in impacts to NJDOE's ability to draw down crucial funding, including but not limited to Title I funding, school and district staffing, and supplemental funding for disadvantaged groups including students with disabilities and students experiencing homelessness as well as delays in receiving technical support or in receiving answers about who is the point of contact for which programs and grants.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed this 19th day of March 2025, in Trenton, New Jersey.

*Kathleen Ehling*

Kathleen Ehling

Assistant Commissioner
New Jersey Department of Education