## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VICTIM RIGHTS LAW CENTER; T.R., by and through his parent, TARA BLUNT; TARA BLUNT; A.J., by and through his parent, KAREN JOSEFOSKY; and KAREN JOSEFOSKY,<br><br>*Plaintiffs*,<br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION; LINDA MCMAHON, in her official capacity as Secretary of Education; and CRAIG TRAINOR, in his official capacity as Acting Assistant Secretary for Civil Rights,<br><br>*Defendants*. | )<br>)<br>)<br>)  Case No. 1:25-cv-11042-MJJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' RESPONSE TO MOTION TO VACATE PRELIMINARY INJUNCTION OR ALTERNATIVELY TO ISSUE A STAY PENDING APPEAL

# TABLE OF CONTENTS

**Page(s)**

**TABLE OF CONTENTS** .................................................................................................i

**TABLE OF AUTHORITIES** ......................................................................................... ii

**INTRODUCTION** .........................................................................................................1

**BACKGROUND** ...........................................................................................................3

    **A.** *New York v. McMahon* **and** *Somerville Public Schools v. Trump* .......................3

    **B.** *Victim Rights Law Center v. U.S. Department of Education* ..................................7

**ARGUMENT** ................................................................................................................9

  **I. The Court should not vacate the injunction under Rule 60(b).** ...................................9

    **A.** **The** *New York* **order does not warrant vacatur.** ...................................................10

      **1.** **An emergency stay order does not change the governing law.** ...................11

      **2.** **The** *New York* **order did not decide the issues here.** ...................................11

    **B.** **The equities cut against vacatur.** ........................................................................15

  **II. The Court should not enter a stay pending appeal.** ................................................19

**CONCLUSION** .............................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostini v. Felton*,
   521 U.S. 203 (1997) ..........................................................................................9, 10

*Am. Pub. Health Ass'n v. Nat'l Institutes of Health*,
   No. 25-1611, 2025 WL 2017106 (1st Cir. July 18, 2025)......................................19

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983) .................................................................................................11

*AngioDynamics, Inc. v. Biolitec AG*,
   880 F.3d 596 (1st Cir. 2018) ....................................................................................9

*Beam v. Friends of the Earth*,
   434 U.S. 1310 (1977) .........................................................................................16, 17

*Davila–Alvarez v. Escuela de Medicina Universidad Central del Caribe*,
   257 F.3d 58 (1st Cir. 2001) ......................................................................................9

*Does 1-3 v. Mills*,
   39 F.4th 20 (1st Cir. 2022) ......................................................................................20

*Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*,
   145 S. Ct. 898 (2025) ..............................................................................................15

*Kemp v. United States*,
   596 U.S. 528 (2022) .................................................................................................10

*League of Women Voters v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016).....................................................................................16

*Lepore v. Vidockler*,
   792 F.2d 272 (1st Cir. 1986) ....................................................................................9

*Loughran v. Loughran*,
   292 U.S. 216 (1934) .................................................................................................17

*Massachusetts v. Kennedy*,
   No. 25-cv-10814, 2025 WL 1371785 (D. Mass. May 12, 2025) ........................11, 17

*McMahon v. New York*,
   No. 24A1203, 2025 WL 1922626 (U.S. July 14, 2025)........................................2, 6

*Merrill v. Milligan*,
　142 S. Ct. 879 (2022) ...............................................................................................11

*Motorola Credit Corp. v. Uzan*,
　561 F.3d 123 (2d Cir. 2009) ...............................................................................17, 19

*Nash v. Hepp*,
　740 F.3d 1075 (7th Cir. 2014) ..................................................................................10

*Nat'l Treasury Emps. Union v. Vought*,
　774 F. Supp. 3d 1 (D.D.C. 2025) ...............................................................................17

*Nat'l Treasury Emps. Union v. Vought*,
　2025 WL 1144536 (D.D.C. Apr. 3, 2025) ..................................................................17

*New York v. McMahon*,
　No. 25-cv-10601, 2025 WL 1463009 (D. Mass. May 22, 2025) .................................2, 3, 4, 14

*New York v. McMahon*,
　No. 25-cv-10601, 2025 WL 1478007 (D. Mass. May 23, 2025) .................................4

*Nken v. Holder*,
　556 U.S. 418 (2009) .................................................................................................19

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
　324 U. S. 806 (1945) ................................................................................................17

*Rhode Island v. Trump*,
　No. 1:25-cv-128, 2025 WL 1303868 (D.R.I. May 6, 2025) ........................................11

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
　547 U.S. 47 (2006) ...................................................................................................13

*Somerville Pub. Schs. v. McMahon*,
　139 F.4th 63 (1st Cir. 2025) .....................................................................................4

*Trump v. Boyle*,
　No. 25A11, 2025 WL 2056889 (U.S. July 23, 2025) ..................................................6

*Ungar v. Palestine Liberation Org.*,
　599 F.3d 79 (1st Cir. 2010) ......................................................................................10

*United States v. Kayser-Roth Corp.*,
　272 F.3d 89 (1st Cir. 2001) ......................................................................................10

*United States v. Martinez*,
　No. 00-cv-10172, 2013 WL 951277 (D. Mass. Mar. 8, 2013) ...................................10

*Victim Rts. L. Ctr. v. U.S. Dep't of Educ.*,
No. 25-cv-11042, 2025 WL 1704311 (D. Mass. June 18, 2025) .......................................*passim*

*Williams v. Atkins*,
786 F.2d 457 (1st Cir. 1986) .............................................................................................9

**Statutes**

20 U.S.C. § 3401(2)...........................................................................................................16

20 U.S.C. § 3473(a) ...........................................................................................................14

**Rules**

Rule 60(b) ..........................................................................................................1, 9, 10, 17

**Regulations**

34 C.F.R. 100.7(c) .............................................................................................................14

**Other Authorities**

11 Fed. Prac. & Proc. Civ. § 2857 (3d ed.) ......................................................................10

Exec. Order No. 14,242 .....................................................................................................16

## INTRODUCTION

The government seeks to vacate or stay a preliminary injunction with which it has not complied, and which it waited almost a month to appeal, based solely on an unsigned, unexplained order in a case this Court has already distinguished from this one. The motion should be denied.

In this case, the families of two students excluded from public school due to discrimination, along with a victim advocacy organization, challenge the decision of the U.S. Department of Education to gut the office that Congress created to help them. Four months ago, the department initiated an unprecedented reduction in force ("RIF") that reduced the staff at the department's Office for Civil Rights ("OCR") to the lowest levels in its history. That RIF stalled civil rights investigations across the country and left thousands of students, including Plaintiffs, without recourse for discrimination in school. Well over a month ago, this Court recognized that the RIF likely violated federal law and, if allowed to proceed, would cause irreparable harm to Plaintiffs and thousands of students who rely on OCR to protect them. *Victim Rts. L. Ctr. v. U.S. Dep't of Educ.*, No. 25-cv-11042, 2025 WL 1704311, at *11-19 (D. Mass. June 18, 2025). It entered a preliminary injunction that stayed the RIF as to affected OCR employees only, and it directed the department to facilitate those employees' return to work. *See id.* at *20.

The government did not appeal or move to stay that order for over four weeks while the injunction remained in place. Nor did it comply with the Court's order: To date, the department has yet to return a single affected OCR employee to work. Yet the government now asks this court to release it, on "equitable" grounds, from any obligation to comply with the preliminary injunction going forward. Fed. Civ. P. 60(b)(5). The sole reason it gives is an unsigned, unexplained order entered on the Supreme Court's emergency docket in a separate case. In that case, this Court had held that a group of states, school districts, and teachers' unions had standing to challenge the RIF

based on the particular harms they suffered, and it enjoined the RIF departmentwide. *See New York v. McMahon*, No. 25-cv-10601, 2025 WL 1463009, at *1-2, *11-16, *40 (D. Mass. May 22, 2025). The Supreme Court stayed that broader injunction on July 14 without any reasoning. See *McMahon v. New York*, No. 24A1203, 2025 WL 1922626 (U.S. July 14, 2025).

That stay order does not justify the extraordinary equitable relief the government seeks. As is well established, an order granting a stay on the Supreme Court's emergency docket does not change the law, especially when the Supreme Court chooses to announce no reasoning that could govern other cases. And in any event, this case differs from *New York*. Indeed, this Court has already held that the differences between *New York* and this case warranted a "separate decision" to address the "unique harms" the RIF caused the plaintiffs here. *Victim Rts. L. Ctr.*, 2025 WL 1704311, at *1. Those different injuries provide different grounds for standing and irreparable harm. *See id.* at *8-9, *16-19. Unlike the states, unions, and school districts in *New York*—many of whom are often the targets of OCR investigations, rather than the complainants—the plaintiffs here have active complaints with OCR that they need resolved. *See id.* at *8.

The injunction here is also far narrower than the one in *New York*. The sweeping order there enjoined the RIF departmentwide. *New York*, 2025 WL 1463009, at *40. The injunction in this case applies only to one office (OCR) and to a small fraction of the employees the Court ordered reinstated in *New York*. *See Victim Rts. L. Ctr.*, 2025 WL 1704311, at *20. Given the injunction's more modest reach, it places a lesser (if any) burden on the government than the departmentwide injunction the Supreme Court stayed in *New York*. *See id.* at *19.

The equities also cut hard against vacatur or a stay. This Court already found that the preliminary injunction is necessary to protect the Plaintiffs and the thousands of other students nationwide who rely on OCR, and it found the injunction placed no undue burden on the

2

government. *See id.* at *19. Even now, the government identifies no real harm it would suffer if the order remains in place pending appeal. Indeed, if the government really feared irreparable harm without a stay, it would have moved to stay the injunction shortly after it issued, as it has in other cases. Its long delay here undermines its sudden claim of urgency.

And any claim that the department would face an undue burden if required to restore fired OCR employees to active duty would decry a problem of its own making: Over three months after the Court ordered the department to restore employees in *New York*, and over a month after the Court entered its order in this case, the department should have already returned OCR staff to their posts. Instead, department officials have repeatedly stated their intent to proceed with the RIF departmentwide—despite this Court's order prohibiting that very action as to OCR. The Court should not reward the government's noncompliance with extraordinary equitable relief.

## BACKGROUND

Four months ago, on March 11, 2025, the Department of Education announced a RIF that cut the department's workforce in half. Mar. 11, 2025 Press Release, Doc. No. 20-6. The RIF eliminated most of OCR's staff and closed seven of its twelve regional offices. *Victim Rts. L. Ctr.*, 2025 WL 1704311, at *5. In two separate proceedings in this Court, two sets of plaintiffs challenged all or part of the RIF and sought different relief.

### A. *New York v. McMahon* and *Somerville Public Schools v. Trump*

Shortly after the Secretary announced the RIF, a group of states, school districts, and teachers' unions sued and moved for a preliminary injunction to stop the RIF departmentwide. *See New York* v. *McMahon*, No. 25-cv-10601 (D. Mass.), ECF Nos. 1, 69; *Somerville Pub. Schs. v. Trump*, No. 25-cv-10677 (D. Mass.), ECF Nos. 1, 25 (collectively, "*New York*"). On May 22, 2025, this Court consolidated those cases and granted the plaintiffs' requests for a preliminary

injunction. *New York*, 2025 WL 1463009, at *40. In doing so, it held that the plaintiff states, school districts, and unions had standing based on claimed delays in receiving federal funding and the financial uncertainty those delays engendered. *See id.* at *17-19. Unlike the more limited injunction in this case, the injunction in *New York* enjoined an executive order that had directed the department to facilitate the closure of the Department consistent with applicable law. *Id.* at *2, *40. The order also broadly stayed the RIF departmentwide and directed the reinstatement of affected employees across the whole agency. *See id.* at *40.

The very next day, on May 23, 2025, the government appealed and moved this Court, then the First Circuit, to stay the *New York* injunction pending appeal. This Court denied a stay. *New York v. McMahon*, No. 25-cv-10601, 2025 WL 1478007 (D. Mass. May 23, 2025). Twelve days later, on June 4, the First Circuit issued a full published opinion denying the appellate motion to stay. *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 67 (1st Cir. 2025). The government then asked the Supreme Court to stay the *New York* injunction pending appeal. *See* Appl. to Stay Inj., *McMahon v. New York*, No. 24A1203 (filed June 6, 2025) ("Gov't Appl. for Stay").

Before the Supreme Court, the government principally argued that the states, school districts, and teachers' unions lacked standing to challenge the RIF. *See* Gov't Appl. for Stay 15-25. It did not dispute that those plaintiffs would have standing if the RIF deprived them of legally mandated funds or services. But it argued that the plaintiffs did not "identify any funding that has been delayed or canceled due to the RIF"; per the government, they only speculated about "fear[ed]" future delays that were uncertain to happen. Reply in Supp. of Appl. for Stay 4-5, *McMahon v. New York*, No. 24A1203 (filed June 16, 2025) ("Gov't Reply re: Stay"). Although the plaintiffs argued they had informational injuries—a loss of guidance and assistance flowing from certain components of the department—the government argued those were not cognizable

harms because no law entitled the plaintiffs to the information they sought. *Id.* at 6-7. And it argued that the plaintiffs' primary injury, their "feared losses of funding," was not irreparable because they could recover the money later through the Federal Court of Claims. Gov't Appl. for Stay 38.

The *New York* and *Somerville* plaintiffs did not rely heavily on injuries related to OCR. Indeed, the government asserted that they had "all but abandon[ed] their allegations relating to the Office for Civil Rights." Gov't Reply re: Stay 7-8. The unions said that their members sometimes "file complaints with OCR on behalf of themselves or their students when faced with a discriminatory working or learning environment," but unlike the plaintiffs here, they did not point to any pending complaint with OCR. *See* Opp'n of Somerville Pub. Schs. to Appl. for Stay 13, *McMahon v. New York*, No. 24A1203 (filed June 13, 2025) ("Somerville Opp'n to Stay") 13. The states argued that the RIF forced them "to dedicate greater resources to civil rights enforcement" to comply with Title VI and Title IX. Opp'n of State Pls. to Appl. for Stay 11, 23, *McMahon v. New York*, No. 24A1203 (filed June 13, 2025) ("States Opp'n to Stay"). And the *Somerville* plaintiffs argued that school districts would suffer an informational injury because they would lose OCR's guidance concerning how to implement federal civil rights laws. Somerville Opp'n to Stay 13, 26-28. But the government responded that the federal laws "simply obligate federal funding recipients to avoid race and sex discrimination in their own operations, not to replace all federal enforcement with their own." Gov't Reply re: Stay 8. And it argued that the laws do not require OCR to provide the guidance the states and school districts sought. *See id.* at 7.

The government's other arguments also relied largely on facts and issues unique to the *New York* and *Somerville* cases. As here, the government said that certain federal labor and employment statutes precluded jurisdiction. *See* Gov't Appl. for Stay 25-30. But, in addressing the equities, it stressed the departmentwide breadth of the *New York* injunction. *See id.* at 35-39. Unlike in this

case, where the government did not claim that the more limited injunction entered here would impose a significant financial burden (*see* Opp'n to Pls.' Mot. for Prelim. Inj. 23, Doc. No. 25), the government's brief in *New York* stressed the "complex and costly challenges" of "re-onboard[ing]" "nearly 1400 workers" across the department, Gov't Appl. for Stay at 36-38. It argued that these departmentwide burdens outweighed the allegedly speculative fears of "financial uncertainty and delay" pressed by the states, school districts, and unions. *Id.* at 37-38.

The government also made arguments about the appropriate remedy that it did not make in this case. First, it claimed that ordering the government "to reinstate nearly 1400 employees was an unlawful remedy" because (in its view) the APA did not authorize reinstatement. Gov't Appl. for Stay 30-33. Second, it argued that even if the APA did authorize reinstatement, the departmentwide relief was too broad because the plaintiffs "allege[d] adverse effects on only certain departmental services carried out by specific employees," *id.* at 14, and the Court did not "tailor its reinstatement order to restore any particular function or functions upon which respondents allege they rely," *id.* at 33. Moreover, said the government, the injunction reached some functions that were "discretionary" and not "statutorily mandated." *Id.*; *compare id.* at 14, 30-33 *with* Opp'n to Pls.' Mot. for Prelim. Inj. 23, Doc. No. 25 (making no such arguments).

On July 14, the Supreme Court granted the government's application for a stay in an unsigned order. *See McMahon*, 2025 WL 1922626, at *1. The Court did not state any reasons for its decision. *See id.* As Justice Kagan later put it, "[i]f the majority had any valid basis for taking that action (relating, say, to the breadth of the District Court's preliminary injunction) it did not appear on the face" of the order. *Trump v. Boyle*, No. 25A11, 2025 WL 2056889, at *2 (U.S. July 23, 2025) (Kagan, J., dissenting) (describing the *New York* stay order).

### B. Victim Rights Law Center v. U.S. Department of Education

Plaintiffs filed this case on April 21, 2025, while the *New York* and *Somerville* cases were pending and before this Court granted the preliminary injunction in those cases. Compl., Doc. No. 1. Plaintiffs are two students and their families and a legal advocacy organization. Unlike in *New York*, two have pending complaints with OCR, and they challenge the RIF only as to OCR.

Plaintiffs T.R. and A.J. are two students who were excluded from public school because of discrimination. *Victim Rts. L. Ctr.*, 2025 WL 1704311, at *6-7. When T.R. was in elementary school, he was harassed repeatedly based on his race: Other students called him a "monkey" and a "n*gger," and told him he looked like a "turd." Blunt Decl. ¶¶ 4-8, Doc. No. 20-15. They pushed him to the ground and stomped on his head. *Id.* ¶ 5. A.J. faced harassment based on his disability— a life-threatening allergy to dairy. Josefosky Decl. ¶¶ 6-7, Doc. No. 20-16. Other students taunted him for the allergy and poured milk on his lunch and coat. *Id.* ¶ 6. One day, they surrounded him, pushed him, tripped him, and put cheese on his head. *Id.* ¶ 7. Because T.R. and A.J.'s schools would not stop the abuse, their parents had to withdraw them from public school. Blunt Decl. ¶ 10, Doc. No. 20-15; Josefosky Decl. ¶¶ 9-10, Doc. No. 20-16. They filed complaints with OCR, but those complaints have stalled due to the RIF. *See Victim Rts. L. Ctr.*, 2025 WL 1704311, at *6-8. Because they could not get relief through OCR, A.J.'s parents had to pay a private mediator to mediate their case with the school on their own, without the leverage or expertise that OCR brings. Josefosky Decl. ¶ 22, Doc. No. 20-16. T.R.'s OCR complaint remains unresolved, and he will have to attend private school yet again this fall. Blunt Decl. ¶ 16, Doc. No. 20-15.

Plaintiff Victim Rights Law Center ("VRLC") is a legal advocacy organization that serves survivors of sexual violence. Malone Decl. ¶ 3, Doc. No. 20-17. Its attorneys represent students in OCR investigations and had three complaints pending in OCR's now-closed Boston office. *Id.*

¶¶ 11-12. They have not heard anything from OCR about those cases since the RIF, despite asking for updates. *Id.* ¶ 12. Because of the RIF, VRLC has had to turn down clients for whom OCR was the only path to recourse. *Id.* ¶¶ 13-15. Meanwhile, it has had to devote hours of time to updating training and policy materials and to responding to the many requests from attorneys and advocates across the country who need to know where to seek relief now that OCR is unlikely to provide the resolutions their clients need. *Id.* ¶¶ 17-31; *Victim Rts. L. Ctr.*, 2025 WL 1704311, at *7, *9.

On June 18, 2025, this Court granted Plaintiffs' motion for a preliminary injunction. *See Victim Rts. L. Ctr.*, 2025 WL 1704311, at *1. Although the Court had already entered the injunctions in the *New York* cases, it found that "Plaintiffs' case *warrant[ed] a separate decision*," and a separate injunction, "to address the *unique harms* they are suffering." *Id.* at *1 (emphasis added). The Court stayed the RIF as to OCR, and it ordered the government to "take all steps necessary to facilitate the return to duty" of the affected OCR employees, to "investigate all complaints alleging violations of [the] federal civil rights laws" OCR enforces, to provide notice of the injunction to its officers and employees, and to file weekly status reports describing "all steps Defendants have taken to comply" with the injunction. *Id.* at *20.

Well over two months after the Court entered the injunction in *New York* and over one month after it entered the injunction in this case, the government has yet to report that it has returned a single OCR employee to duty. Rather, department officials have repeatedly indicated that they intend to continue the RIF departmentwide even though this Court's order prohibits such action as to OCR. The day the Supreme Court issued its order in *New York*, the Secretary of Education announced without qualification that the department would "carry out the reduction in force." Ex. 1, July 14, 2025 Press Release. On cue, the department immediately emailed all employees subject to the RIF, including OCR employees covered by the Court's injunction in this

case, that it was "continuing with the reduction in force." July 15 Oglesby Decl. Ex. 1 at 3, Doc. No. 47-1; *see* Ex. 2, Gonzales Supp. Decl. ¶ 13. It told them, "Following the Supreme Court's decision, your separation date has been adjusted to August 1, 2025." July 15 Oglesby Decl. Ex. 1 at 3, Doc. No. 47-1. Confusingly, it failed to acknowledge that the injunction in this case remained in place. Instead, it said that OCR employees affected by this case would be "separately notified of their separation at the appropriate time." *Id.* Of course, this Court's order expressly prohibits any such separation on August 1 or at any time while this Court's order remains in place.

On July 21, the government moved to vacate the June 18 preliminary injunction or to stay that order pending an appeal, which the government has not yet filed. Defs.' Mot. to Vacate Prelim. Inj. or for Stay Pending Appeal ("Mot. to Vacate"), Doc. No. 48.

## ARGUMENT

### I.    The Court should not vacate the injunction under Rule 60(b).

The government asks the Court to vacate the injunction under Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6). "Rule 60(b) is a vehicle for 'extraordinary relief'" that "should be granted 'only under exceptional circumstances.'" *Davila–Alvarez v. Escuela de Medicina Universidad Central del Caribe,* 257 F.3d 58, 63-64 (1st Cir. 2001) (quoting *Lepore v. Vidockler,* 792 F.2d 272, 274 (1st Cir. 1986)). Rule 60(b)(5) allows a court to modify an injunction if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). To show that the prospective application of the order is "inequitable," the government "must point to 'a significant change either in factual conditions or in law.'" *AngioDynamics, Inc. v. Biolitec AG*, 880 F.3d 596, 599 (1st Cir. 2018) (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)). The change in the law must control the case at hand. A mere change to "related, but not dispositive" law will not justify vacatur. *Williams v. Atkins*, 786 F.2d 457, 460 (1st Cir. 1986).

Rule 60(b)(6) sets an even higher bar. "Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini*, 521 U.S. at 239. Some courts have held that "[c]hanges in decisional law . . . do not constitute the 'extraordinary circumstances' required for granting Rule 60(b)(6) relief" at all. *United States v. Martinez*, No. 00-cv-10172, 2013 WL 951277, at *3 (D. Mass. Mar. 8, 2013) (Saris, J.); *accord Nash v. Hepp*, 740 F.3d 1075, 1078 (7th Cir. 2014). And even if a legal change could justify such relief, Rule 60(b)(6) would, like Rule 60(b)(5), require at least a change in "*controlling* law." *Kemp v. United States*, 596 U.S. 528, 540 (2022) (Sotomayor, J., concurring) (emphasis added).

Because Rule 60(b) relief is equitable in nature, the equities must favor the movant to justify relief. *See* Fed. R. Civ. P. 60(b)(5) (permitting relief from an order if "applying it prospectively is no longer equitable"); *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 83 (1st Cir. 2010) ("The decision to grant or deny [60(b)(6)] relief is inherently equitable in nature."); Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2857 (3d ed.) ("Equitable principles may be taken into account by a court in the exercise of its discretion under Rule 60(b)."). The movant must show that, in light of the change in law, the order "would inflict undue hardship" if not lifted. *United States v. Kayser-Roth Corp.*, 272 F.3d 89, 94 (1st Cir. 2001). Conversely, it must show that vacatur would not cause "unfair prejudice" to those who benefit from the injunction. *Id.* at 95.

**A. The *New York* order does not warrant vacatur.**

The Supreme Court's unexplained order in *New York* does not warrant vacatur here. An emergency stay order does not change the controlling law. And even if it did, this case presents

different factual and legal issues than *New York*, so the merits of the two cases do not rise and fall together. To boot, equitable considerations in this case tilt strongly against vacatur.

### 1. An emergency stay order does not change the governing law.

First, the Supreme Court's decision on its emergency docket to stay a case pending appeal "does not make or signal any change" in the "law." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring); *accord Massachusetts v. Kennedy*, No. 25-cv-10814, 2025 WL 1371785, at *6 (D. Mass. May 12, 2025) (collecting authority that such an order has "limited" "precedential value" and "does not displace governing law" (quoting *Rhode Island v. Trump*, No. 1:25-cv-128, 2025 WL 1303868, at *5 (D.R.I. May 6, 2025))). That is because an emergency "stay order," issued without "full briefing, oral argument, and [the] usual extensive internal deliberations," "is not a ruling on the merits"; "it simply stays the District Court's injunction *pending a ruling on the merits*." *Merrill*, 142 S. Ct. at 879 (Kavanaugh, J. concurring).

Such an interim order's effect on other cases is, necessarily, especially faint when the Court chooses not to announce the reasons for its decision. Because the Court in *New York* did not pronounce any rule of law, any attempt to infer the basis for its order would be purely speculative— and its decision cannot have changed the governing law in this case.

### 2. The *New York* order did not decide the issues here.

The stay in *New York* would not affect this case even if it had precedential effect. Even when the Supreme Court decides the merits in a "summary disposition," the "precedential effect" of such an order "extends no further than 'the precise issues presented and necessarily decided by'" the order. *Anderson v. Celebrezze*, 460 U.S. 780, 784 n.5 (1983) (citation omitted). "[N]o more may be read into" the Court's action "than was essential to sustain" it. *Id.*

11

The Supreme Court's unexplained decision to stay the *New York* injunction did not "necessarily accept[ ] Defendants' arguments" in *this* case, as the government contends, Mot. to Vacate 4, Doc. No. 48. The plaintiffs here have different arguments for standing, irreparable harm, the merits, the balance of equities, and the scope of the remedy than the plaintiffs in *New York*. Thus, the *New York* order does not undermine this Court's conclusion that Plaintiffs are likely to succeed on the merits, that the RIF causes irreparable harm to them and thousands of students who rely on OCR, and that no countervailing interest outweighs the need for the much narrower relief the Court ordered here. *See Victim Rts. L. Ctr.* 2025 WL 1704311, at *11-19.

**Standing and Irreparable Harm**. First, the plaintiffs here have "unique harms" that flow from the RIF's effects on OCR. *Victim Rts. L. Ctr.*, 2025 WL 1704311, at *1. Those distinct injuries would allow them to show standing and irreparable harm even if the plaintiffs in the *New York* cases cannot. In *New York*, the government argued that the plaintiffs had not identified "any funding that has been delayed or canceled due to the RIF" and that their "fears about how the RIF might affect funding" in the future were too speculative to demonstrate standing. Gov't Reply re: Stay 4-6. And it claimed that the unions, states, and school districts—who are often the *targets* of OCR investigations—did not have standing to challenge the RIF's effects on OCR. *See id.* at 8.

T.R., in contrast, is excluded from public school *now*. *Victim Rts. L. Ctr.*, 2025 WL 1704311, at *6-7. And unlike any of the *New York* plaintiffs, he has a live complaint seeking needed relief from OCR. *Id.* He relied on evidence different from the *New York* plaintiffs to show that the RIF has already stalled his OCR investigation and delayed the relief he needs to go back to public school. *See id.* at *8. This was (and is) a "procedural injury" that the states, school districts, and teachers' unions in *New York* did not even claim to suffer. *See id.* at *8. And unlike in *New York*, where the government argued that the plaintiffs could recover their monetary losses

later, *see* Gov't Appl. for Stay 38, the government cannot dispute that T.R. can never recover his loss of educational opportunity. *See Victim Rts. L. Ctr.*, 2025 WL 1704311, at *17. He suffers irreparable harm each day he remains out of public school because of discrimination. *See id.*[1]

Victim Rights Law Center also has distinct injuries that the states, school districts, and unions did not claim to suffer. It, like the student plaintiffs, has pending complaints with OCR that have stalled because of the RIF. *Victim Rts. L. Ctr.*, 2025 WL 1704311, at *9. All of VRLC's complaints are pending in OCR's Boston office, which closed in the RIF, and VRLC has still heard nothing but radio silence since then. *See id.* It has had to turn away clients because of the RIF. *See id.* And it has sunk hours of attorney time into research to advise advocates nationwide about alternative remedies. *See id.* The plaintiffs in the *New York* cases did not claim the same harms.

So even if the Supreme Court believed the *New York* plaintiffs did not show likely standing or irreparable harm, that would have no bearing on this case. T.R. and VRLC have shown both.

***Balance of Equities and Scope of the Remedy***. The injunction in this case is also far narrower and less burdensome than the departmentwide mandate in *New York*. Before the Supreme Court, the government stressed the breadth of the injunction, which required it to pay and re-onboard "nearly 1400 employees" across the department and not just in specific components that provided funding or services on which the plaintiffs relied. Gov't Appl. for Stay 14, 22, 34-39. Here, in contrast, the Court's order requires only that the department allow a small fraction of those employees to continue their work. *See* July 22, 2025 Oglesby Decl. 2, Doc. No. 50-1 (testifying that the department has identified 276 OCR employees who received RIF notices on March 11

---

[1] A.J.'s family resolved his claims against the school district through a private mediation process that concluded on July 24. As a result of the settlement, he must withdraw his OCR complaint. Whatever the effect of that settlement on A.J.'s standing to sue, it does not defeat jurisdiction here. *See Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").

who "are available to be reintegrated to active duty"). That is perhaps why the government did not point to financial costs or re-onboarding burdens in opposing the more modest injunction in this case. *See* Opp'n to Mot. for Prelim. Inj. 23, Doc. No. 25. And unlike the *New York* order, which arguably required the department to restore workers in offices that provided services the plaintiffs did not use, Plaintiffs here rely on OCR and suffer harm from its decimation.

The government's separation-of-powers argument in *New York*—that the injunction caused the government irreparable harm because it invaded the Secretary's power over the department's "internal affairs" like personnel matters, Gov't Appl. for Stay 37—does not apply here, either. As the government has not disputed, the Secretary lacks any authority to hire or fire OCR employees, as she did through the RIF. *See Victim Rts. L. Ctr.*, 2025 WL 1704311, at *14 (citing 20 U.S.C. § 3473(a)). And "the Secretary does *not* have discretion to make enforcement decisions in the OCR." *Id.* at 12 n.7. Congress vested those powers in the Assistant Secretary for Civil Rights, *see id.*, and federal regulations require him to investigate all complaints that suggest a "possible" violation of the civil rights laws, *id.* at *13 (citing 34 C.F.R. 100.7(c)). Although the plaintiffs in *New York* cited these restrictions on the Secretary's power, their requested injunction also applied to departmental components that the Secretary had some discretion to reorganize. *See New York*, 2025 WL 1463009, at *26 (noting the Secretary's discretion to "consolidate, alter, or discontinue" offices within the department aside from OCR and other specified offices). The injunction here, in contrast, affects only OCR, over which the Secretary has no such discretion. *See id.*

*Merits*. On the merits, too, this Court's decision here rests on several grounds unique to OCR. For example, in finding that Plaintiffs' APA claims were likely to succeed, the Court relied in part on OCR's longstanding position across administrations that at least 500 full-time equivalent employees were "necessary" to deliver on its mandates. *Victim Rts. L. Ctr.*, 2025 WL 1704311, at

*13-14. The decision to reduce OCR's staff to its lowest level in history is a marked about-face that required the department to "display awareness that it *is* changing position" and offer "good reasons" for the change. Mem. in Supp. of Mot. for Prelim. Inj. 17, Doc No. 19 (quoting *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 918 (2025)). The plaintiffs in *New York* and *Somerville* did not make the same argument. *See* Mem. in Supp. of Mot. for Prelim. Inj., *New York*, No. 25-cv-10601 (D. Mass. Mar. 24, 2025), ECF No. 70; Mem. in Supp. of Mot. for Prelim. Inj., *Somerville*, No. 25-cv-10677 (D. Mass. Apr. 1, 2025), ECF No. 26.

More broadly, in this case, the Court held the applicable law prohibits the Secretary to fire OCR employees or make civil rights enforcement decisions, requires OCR to employ enough officers to carry out its functions, and directs OCR to promptly investigate and resolve civil rights complaints. *See Victim Rts. L. Ctr.*, 2025 WL 1704311, at *14. And it relied on robust evidence that the RIF has stymied OCR's ability to perform its obligations to students. *See id.* at *5-6, 13-15; Mem. in Supp. of Mot. for Prelim. Inj. 8-9, 16-20, Doc. No. 19. Although the *New York* and *Somerville* plaintiffs made some of those arguments, the government argued that they lacked the stake in OCR necessary seek relief as to that office, specifically. *See supra* 12. Plaintiffs here, in contrast, have a direct stake in OCR. *See Victim Rts. L. Ctr.*, 2025 WL 1704311, at *8-9.

Given these differences between this case and *New York*, the Supreme Court's order there does not affect the Court's conclusion that the plaintiffs in this case are entitled to injunctive relief.

**B.  The equities cut against vacatur.**

The equities also cut hard against vacatur. First, lifting the preliminary injunction would inflict immeasurable harm on vulnerable American students, including Plaintiffs. Thousands of "students across the country . . . look to OCR to obtain [the] relief" they need to go back to school, learn free from abuse and harassment, or accommodate their disabilities. *Victim Rts. L. Ctr.*, 2025

15

WL 1704311, at *19. Returning OCR staff to work benefits those students and furthers Congress'

goal in creating a civil rights office: to meet the "continuing need to ensure equal access for all

Americans to educational opportunities." *Id.* (quoting 20 U.S.C. § 3401(2)). And the Court's order

merely requires the department to restore OCR to staffing levels that every prior administration

has deemed necessary to deliver on its undisputed statutory and regulatory mandates. *See id.*, at

*13-14. In doing so, it allows the agency to work on the growing backlog of complaints the law

requires it to address. *See id.* at *15; Mem. in Supp. of Mot. for Prelim. Inj. 8-9, 25, Doc. No. 19.

On the other hand, the government points to no harm that would justify vacating the Court's

order. Even now, the government does not argue that financial or practical burdens justify lifting

the injunction. The only claimed harm the government has cited is that the order "disrupt[s] the

Department's efforts to comply with" the President's policy preferences. Opp'n to Mot. for Prelim.

Inj. 23, Doc. No. 25. But if that were enough, a court could hardly ever enjoin executive action.

And the government's argument fails on its own terms, anyway. The President's order directed the

department to act "consistent with applicable law" and "ensur[e] the effective and uninterrupted

delivery of services, programs, and benefits on which Americans rely." Exec. Order No. 14,242,

90 Fed. Reg. 13,679 (Mar. 20, 2025). By taking actions Congress specifically forbade and hobbling

OCR's capacity to meet its mandates, the Secretary transgressed both Congressional and

Presidential directives. There is "no public interest in the perpetuation" of such "unlawful agency

action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

The government's delay further undermines any claim of irreparable harm flowing from

the preliminary injunction. The order was in place for over a month before the government moved

to vacate or stay it. That delay in "seeking a stay vitiates much of the force" of any "allegations of

irreparable harm" the government could make. *Beam v. Friends of the Earth*, 434 U.S. 1310, 1313

(1977). The government suggests that it waited so long because it had already moved to stay the broader injunction in *New York*. But the government knew (or should have known) that any stay in *New York* would have "limited" precedential value and would not change the governing law in this case. *Massachusetts,* 2025 WL 1371785, at *6; *see supra* 11. Likely for that reason, it has promptly moved to stay other injunctions even when a broader one providing the same relief was already on appeal. *See, e.g.*, *Nat'l Treasury Emps. Union v. Vought*, 2025 WL 1144536, at *1 (D.D.C. Apr. 3, 2025) (reflecting that the government moved for a stay less than a week after the injunction entered); *Nat'l Treasury Emps. Union v. Vought*, 774 F. Supp. 3d 1, 50 n.14 (D.D.C. 2025) (noting that broader injunction providing similar relief was in place and on appeal). If the government really feared irreparable injury here, it would have likewise moved quickly so the courts could consider its stay request in tandem with the one in *New York*.

That the government has yet to restore OCR staff to duty—and would still need to do so if the injunction remains in place—does not justify relief, either. In fact, the government's failure to comply with the Court's order to date cuts against a finding that granting the government relief from that order would be "equitable," Fed. R. Civ. P. 60(b)(5). Because the "relief provided by Rule 60(b) is equitable in nature," "in exercising its discretion" under the rule, "a court may always consider whether the moving party has acted equitably." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 127 (2d Cir. 2009) (quoting 12 *Moore's Federal Practice* § 60.22[5] (3d ed. 2008)). While "'equity does not demand that its suitors shall have led blameless lives,'" "it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U. S. 806, 814–815 (1945) (quoting *Loughran v. Loughran*, 292 U.S. 216, 228 (1934)). The Court may thus deny relief when the movant has defied the judgment it seeks to vacate. *See Uzan*, 561 F.3d at 128-29.

Well over two months after the order in *New York* and over four weeks after the order in this case, the department should have already returned OCR staff to work. *See* Ex. 3, Joseph Decl. ¶ 5. Yet, it has still not returned even a single OCR employee to duty. *See*, *e.g.*, July 30 Oglesby Decl., Doc. No. 53-1 (not reporting a single such return). Nor has it taken obvious steps needed to do so. *See* Ex. 2, Gonzales Supp. Decl. ¶¶ 7-14; Ex. 3, Joseph Decl. ¶¶ 8-12.

The government's excuses for the delay do not make sense. It says that the department has faced delays in "IT restoration and updating," July 30 Oglesby Decl. ¶ 6, Doc. No. 53-1, because computers "previously returned by employees . . . must be reimaged and updated to Windows 11." July 8 Oglesby Decl. ¶ 6, Doc. No. 46-1. But the department does not need to reimage computers to return them to the same users. Ex. 2, Gonzales Supp. Decl. ¶ 12; Ex. 3, Joseph Decl. ¶ 9. And there is no need to withhold computers to update software, which the department has routinely done remotely overnight. Ex. 2, Gonzales Supp. Decl. ¶ 12; Ex. 3, Joseph Decl. ¶ 9. So "there is no reason the Department could not have returned employees' equipment, including laptops and phones, by now." Ex. 2, Gonzales Supp. Decl. ¶ 11. Indeed, many OCR employees still *have* their equipment and just need access to it. Ex. 3, Joseph Decl. ¶ 9. Yet, counterproductively, the department has directed these employees to *return* their equipment. *Id.*

The department's claimed lack of office space, *see* July 30 Oglesby Decl. ¶ 6, Doc. No. 53-1, poses no obstacle either. In the past, most OCR employees worked remotely without issue, and they could do so again while space concerns are addressed. *See* Ex. 2, Gonzales Supp. Decl. ¶ 10; Ex. 3, Joseph Decl. ¶ 15. None of these purported issues explain why the department has taken over two and a half months to get even a single affected OCR employee back to work.

The department's statements outside court suggest the real reason for the delay: it simply does not intend to comply with the injunction. Department officials have openly affirmed their

plan to proceed with the RIF departmentwide, even though this Court's injunction expressly prohibits the department from carrying out the RIF as to OCR. *See* Ex. 1, July 14, 2025 Press Release ("The U.S. Department of Education will now deliver on its mandate to restore excellence in American education. We will carry out the reduction in force to promote efficiency and accountability and to ensure resources are directed where they matter most . . . ."); July 15 Oglesby Decl. Ex. 1 at 3, Doc. No. 47-1 (telling OCR employees they will be separated); Ex. 3, Joseph Decl. ¶ 9 (noting that the department asked OCR employees subject to the RIF to return their government-issued equipment). Meanwhile, OCR has resolved only a small fraction of cases relative to prior administrations. *See* Ex. 2, Gonzales Supp. Decl. ¶ 6.[2]

The government's conduct amounts to undue delay at best, and outright defiance at worst. The Court should not reward it with extraordinary relief. *See Uzan*, 561 F.3d at 128-29.

## II.    The Court should not enter a stay pending appeal.

For the same reasons, the facts do not warrant a stay pending appeal. "As the party seeking a stay pending appeal," the government "bears the burden of justifying the extraordinary relief it requests." *Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, No. 25-1611, 2025 WL 2017106, at *4 (1st Cir. July 18, 2025) (citing *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)). To meet that burden, the government "must make: (1) 'a strong showing that [it] is likely to succeed on the merits'; (2) a showing that it 'will be irreparably injured absent a stay'; (3) a showing that the 'issuance of the stay will [not] substantially injure the other parties interested in the proceeding';

---

[2] *Compare* July 15 Oglesby Decl. ¶ 6, Doc. No. 47 (noting that in the four months from March 11 to July 14, 2025, OCR "resolved 315 cases with voluntary agreements, OCR mediated settlements, or technical assistance") *with* Katherine Knott, *Court Filings Shed Light on Civil Rights Complaints Under Trump*, Inside Higher Ed (July 8, 2025), https://perma.cc/K9G8-S6VJ (noting that in the last three months of the previous administration, OCR resolved 595 cases through mediations or voluntary resolution agreements).

and (4) a showing that 'the public interest lies' with the [government], not the plaintiffs." *Id.* (quoting *Does 1-3 v. Mills*, 39 F.4th 20, 24 (1st Cir. 2022)). It cannot do so.

As explained above, the Supreme Court's order in *New York* does not undermine this Court's conclusions that the plaintiffs here are likely to succeed on the merits, that they would suffer irreparable harm absent relief, and that the balance of equities and public interest support the injunction. *See Victim Rts. L. Ctr.*, 2025 WL 1704311, at *11-19; *supra* Part I.A. The government has not shown it will suffer irreparable harm without a stay. *See supra* Part I.B. And the public interest favors an injunction, not a stay pending appeal. *See id.*

## CONCLUSION

For those reasons, the Court should deny the government's motion to vacate the preliminary injunction, and it should not stay the injunction pending appeal.

Respectfully submitted,

*/s/ Sean Ouellette*
Sean Ouellette
Patrick Archer*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Phone: (202) 797-8600
souellette@publicjustice.net

Leila Nasrolahi*
PUBLIC JUSTICE
475 14th Street, Unit 610
Oakland, CA 94612
Phone: (510) 622-8250
lnasrolahi@publicjustice.net

*Counsel for Plaintiffs*

* *Admitted pro hac vice*

L. Reid Skibell*
Jonathan H. Friedman*
GLENN AGRE BERGMAN & FUENTES LLP
1185 Avenue of the Americas
New York, New York 10036
Phone: (212) 970-1600
rskibell@glennagre.com
jfriedman@glennagre.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to registered participants as identified in the Notice of Electronic Filing.

*/s/ Sean Ouellette*
Sean Ouellette