# EXHIBIT 3

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VICTIM RIGHTS LAW CENTER; T.R., by and through his parent, TARA BLUNT; TARA BLUNT; A.J., by and through his parent, KAREN JOSEFOSKY; and KAREN JOSEFOSKY,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION; LINDA MCMAHON, in her official capacity as Secretary of Education; and CRAIG TRAINOR, in his official capacity as Acting Assistant Secretary for Civil Rights,<br><br>*Defendants*. | Case No. 1:25-cv-11042-MJJ |

## DECLARATION OF KATHRYN JOSEPH

Pursuant to 28 U.S.C. § 1746, I, Kathryn Joseph, hereby declare and state as follows:

1. I am a resident of Washington, District of Columbia. I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2. This declaration is submitted in support of Plaintiffs' Response to Motion to Vacate Preliminary Injunction or Alternatively to Issue a Stay Pending Appeal.

3. I advised and assisted the Assistant Secretary for Civil Rights on the enforcement of federal laws prohibiting discrimination in educational programs receiving federal funds. I also led day-to-day operations of the OCR front office and facilitated effective coordination across OCR's 12 regional offices and the Department.

4.  In this capacity, I gained hands-on experience in OCR's staffing components. Along with the Human Resources and IT teams, I oversaw the development and execution of major hiring plans and the onboarding of OCR employees.

5.  Based on my experience, there is no question that the Department could have restored all OCR employees impacted by the March 11, 2025 reduction in force ("RIF") by now, following the Court's June 18, 2025 Order granting Plaintiffs' Motion for Preliminary Injunction ("Preliminary Injunction Order").

6.  I have reviewed each of the Department's status reports filed in this action to date.

7.  While several steps of approval are needed for onboarding and offboarding OCR employees, the Department's references in its status reports to a "reintegration plan," issues with government-furnished equipment ("GFE"), planning for physical space and telework arrangements, and the reprinting of personal identity verification cards do not explain the Department's delays in complying with this Court's Preliminary Injunction Order.

8.  This is especially true because all OCR employees subject to the RIF are currently classified as active employees in the federal government's personnel systems. Accordingly, updating these employees' statuses from "administrative leave" to "full-time" is as simple as a click of a button.

9.  A number of OCR employees subject to the RIF are currently in possession of their GFE and/or their identification cards, but remain locked out of their equipment. In fact, some have even received cardboard boxes and instructions to return their GFE to the Department within the last week. While identification cards and GFE would need to be reissued to those who have surrendered their equipment, this step should have taken two or three weeks at most. In its status reports, the Department suggests that it has experienced delays because it has had to "reimage"

and update computers before re-issuing them to RIF'd employees. In my experience, however, it is not standard protocol to wipe an active employee's computer or phone before returning it to the same user, and computers can be updated simultaneously within a matter of hours.

10. Although a small number of longtime and/or senior OCR staff may need to renew their background investigations before they can return to work, those individuals can be easily identified, and the background check process should not hinder reinstating others. All OCR employees go through this process every seven to ten years, which is standard for any federal employee with access to sensitive material.

11. The government's status reports also suggest that the process has been delayed based on a lack of responses to its "Outside Employment" and "Employee Reintegration and Space Planning" surveys. It would have been far more efficient—and faster—for the Department to have engaged in direct outreach rather than email surveys. The Department has detailed contact information for the OCR employees on administrative leave, and OCR's Chief Human Capital Officer, Jacqueline Clay, included OCR staff in a July 15, 2025 email to all RIF'd Department staff following the Supreme Court's July 14th decision in *New York v. Trump*. OCR employees have received no further instructions related to the preliminary injunction in this case or the planned reintegration from Ms. Clay.

12. Instead, OCR employees subject to the RIF have been left languishing, eager to return to the roles that some have occupied for decades. OCR could have expedited the process of reintegrating these employees by asking the current OCR team to pull their contact information and, with help from regional directors, engaging directly with each of the impacted OCR employees to confirm their intent to return, whether they are currently in possession of their identification cards and GFE, and any additional information needed to return them to active status.

13. I believe the processes described above would have only taken a few weeks, after which OCR employees could have returned to work.

14. While there are several potential ways to tackle compliance with the Preliminary Injunction Order, the Department's failure to take the steps described above suggests a process that is not intended to return OCR's employees to work.

15. Based on my knowledge and experience as OCR's Chief of Staff, there should be no reason for the issue of office space to hamper the Department's ability to reintegrate OCR employees subject to the RIF. The Department's July 30, 2025 status report discusses regional office space, and states in part that "[s]pace is insufficient to return OCR employees to in-person work in Boston, Philadelphia, and San Francisco." But OCR's investigative staff have been working remotely for several years without issue and can resume their duties the day they receive their Department equipment or regain access while any purported issues regarding office space are resolved.

16. The consequences of these delays are dire—not just for the staff of OCR but for children and youth across the country. When Congress passed the Department of Education Organization Act in 1979, the very first office established within the new agency was the Office for Civil Rights. This primacy of place has led Secretaries of Education to affirm at various points throughout its history that the Department is at its core a civil rights agency. The dedicated employees of OCR have for decades stood sentry against the harm Congress has long promised that "no person" shall experience in school.

17. Now, as always, these experts in their fields remain steadfastly committed to ensuring that education is provided to all, on equal terms. Year over year, they deliver justice for millions of individuals and school communities all over this great nation. It was a great honor to

serve alongside such zealous advocates for this nation's learners, regardless of sex, race, color, national origin, disability, or age.

18. To delay meaningful compliance with this Court's Preliminary Injunction Order does a profound disservice to the students and families who are counting on them for help. Based on my experience, it would likely not have been difficult to reach and reintegrate these employees.

I declare under penalty of perjury that, to the best of my knowledge, the following is true and correct. Executed this 4th day of August, 2025.

> */s/ Kathryn Joseph*
> Kathryn Joseph